## Price's Estate.

*Wills—Vested and contingent remainders—Distribution—Grandchildren.*

Where a testator creates a trust for his children and directs that, upon the death of his last surviving child, the principal shall be divided among his grandchildren, naming one of them specifically, and if any grandchildren shall die leaving issue, such issue shall take the parents' share, but makes no express provision to take effect on the death of a grandchild without issue during the continuance of the trust, the estate of such grandchild dying without issue is not entitled to share in the distribution of the testator's estate upon the death of the last surviving child.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1881, No. 289.

THOMPSON, J., Auditing Judge.—This trust arose under the will of testator, who died July 8, 1865, whereby he gave the residue of his estate to trustees to appropriate and apply the net rents, etc., towards the support and maintenance of his children, Joshua L. Price, Anne P. Richardson, Sarah L. Parrish (including his granddaughter, Lydia W. Parrish), Margaret S. Price and Rebecca P. Hunt, in equal shares during their respective lives, and their spouses, and unto the child or children of any of his children who should be deceased until the decease of the survivor of his said children, the issue of deceased grandchildren to take the parent's share, and in default of issue the survivors of children and grandchildren to take their share. He further provided as follows:

"And after the decease of the survivor of my children it is my further wish, desire and will that my estate may then be equally divided among my grandchildren; including my grand-daughter Lydia W. Parrish; born or to be born, share and share alike so that each of my grandchildren shall each receive an equal share with the others, without regard to the number of children, that each of my children may have. And I hereby authorize and direct my said Executors to assign and convey to my said grandchildren each of their respective share of my residuary estate absolutely and in fee simple. And if any of my grandchildren be then deceased, leaving issue, a child or children, such issue shall take, if one solely, if more than one equally, share and share alike, such portions of my estate, as their parent or parents would have taken if living."

The present account is filed because of the death of Rebecca P. Hunt, the last survivor of testator's children, on Oct. 4, 1927, whereupon the trust came to an end. She left a will upon which letters testamentary issued to Morris L. Parrish.

The grandchildren of testator living at his death and born thereafter were eighteen in number, of whom nine died in the lifetime of Rebecca P. Hunt, without issue. [Here follows a list of names of grandchildren.]

At the audit, the principal of the fund accounted for was claimed, on the one hand, exclusively on behalf of the living descendants of testator just named; while, on the other, the personal representatives of grandchildren who died without issue during the term of the trust claimed to participate in the distribution, on the ground that grandchildren took vested interests—those then in existence, at testator's death, and those born thereafter, as of the date of birth—which interest could be defeated only by death during the pendency of the trust leaving issue.

This brings up anew the vexed question of vested and contingent legacies.

Where there is a present gift, as in Carstensen's Estate, 196 Pa. 325; Neel's Estate, 252 Pa. 394; Porter v. Bryant, 273 Pa. 435; Walker's Estate, 277 Pa. 444, the rule is that the gift vests at the death of the testator, and is

not divested by death during the life of the trust, unless the contingency upon which such divestiture is directed actually occurs. Yet, in Pearson's Estate, 280 Pa. 224, where there was a present gift, but the legatee died before the time of distribution, it was held that the legacy did not vest until the time of distribution, Mr. Justice Simpson saying that "actual distribution to dead people is a 'new thing under the sun.'"

On the other hand, where there is no present or direct gift, but the gift is implied only from the direction to divide and pay or assign and convey, the gift is generally construed as contingent: Moore v. Smith, 9 Watts, 403; Rosengarten v. Ashton, 228 Pa. 389; Hildebrant's Estate, 268 Pa. 132; Alburger's Estate (No. 2), 274 Pa. 15.

Yet, in Packer's Estate (No. 2), 246 Pa. 116, a gift to certain grandchildren, which would otherwise have been held contingent, was held vested because the testator in another portion of the will had mentioned these grandchildren by name.

In Rau's Estate, 254 Pa. 464, where the trustees after a life estate in the daughter were to grant and convey, assign and transfer and set over the principal to the daughter's children and the legal issue of any of them deceased leaving issue, and where the testator in a subsequent portion of the will referred to this share of his estate as having been "given" to the daughter's children and the issue of such as might be dead at the time of distribution, it was held that the children's share vested at the death of the testator.

In McCauley's Estate, 257 Pa. 377, where the gift in remainder was to testatrix's sister, if living, or her children if then deceased, and to the issue of such of them as may then be deceased, but without annexing the condition "if living" to the gift to the children, it was held that the children took an absolute estate subject only to death before distribution leaving issue.

In Jenning's Estate, 266 Pa. 60, where the direction was to divide between testator's three children, share and share alike, it was held that the share of a child was vested subject only to be divested by death pending the trust leaving issue.

And so, where the gift is to a class, the members of which cannot be ascertained until the termination of the trust, it has been held that the members who are to constitute the class are to be determined at the time of distribution: Haskins v. Tate, 25 Pa. 249; Hague v. Hague, 161 Pa. 643; Billings's Estate (No. 1), 268 Pa. 67. But where, though members of a class, the gift is to them as individuals, the rule is otherwise: Sharpless's Estate, 214 Pa. 335.

But to my mind it is not so important to ascertain the character of the legacies intended to be given by testator, whether vested or contingent, as it is to ascertain the persons he intended should take.

More than a century and a quarter ago, Chief Justice Shippen, in Lessee of Hauer v. Shitz, 3 Yeates, 205, said: "The truth is that cases on wills are so various that the best law judges have told us that, although adjudged cases must be followed, otherwise the law would be uncertain, yet any cases in point on wills must be in verbis ipsissimis and made by testators in the same situation and circumstances, otherwise the intention is to govern as it appears from each will."

In Mulliken v. Earnshaw, 209 Pa. 226, it is said that the policy of the later cases on the construction of wills is to ascertain the actual intent of the testator without resort to artificial canons of construction or presumptions of intent from the use of certain forms of expression. This intent must be searched for within the four corners of testator's will, but when we come to consider it and interpret its meaning we must do so in the light of all the cir-

cumstances by which he was surrounded when he made it and by which he was probably influenced: Stambaugh's Estate, 135 Pa. 585; and the surrounding circumstances of the testator—his family—the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will: Hermann's Estate, 220 Pa. 52.

And, down to Shaffer's Estate, 262 Pa. 15, it has been uniformly held that "a testator's intent—once ascertained—must always be carried into effect unless inconsistent with established rules of law, and will not be defeated by any technical rules of construction: Webb v. Hitchins, 105 Pa. 91; Wood v. Schoen, 216 Pa. 425; Arnold v. Muhlenberg College, 227 Pa. 321; Thompson's Estate, 229 Pa. 542."

And, with reference to this question of absolute and contingent interests, the present Chief Justice, in Groninger's Estate, 268 Pa. 184, deemed it wise to repeat, to correct a misapprehension of the bar, from the opinion of Chief Justice Brown in Marshall's Estate, 262 Pa. 145 (149), that "the question is one of substance and not of form, and in all cases it is whether the testator intended it (as) a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies; the answer to this question must be sought for out of the whole will, and not in the particular expression only in which the gift is made."

When we come, now, to the examination of testator's will, we find, as said in my adjudication on the third account of the trustees in this estate, that the testator disposed of principal and income separately and independently, and that participation in principal at the termination of the trust was not conditioned in any way on participation in income during the trust's continuance, for testator expressly declared that principal should be divided among his grandchildren *per capita,* while the income any grandchild might have theretofore enjoyed was a *stirpetal* portion.

While the two clauses are separate and independent, it cannot be overlooked that where a grandchild was entitled to income and died pending the trust, such income passed to his issue, if he left any; and, if not, passed to the other members of testator's family.

When he came to dispose of principal, upon the death of all his children, a distribution in the uncertain and more or less distant future—in fact, sixty-two years distant—testator expressed himself as follows: "And after the decease of the survivor of my children, it is my further wish, desire and will that my estate may then be equally divided among my grandchildren, including my granddaughter Lydia W. Parrish; born or to be born, share and share alike, so that each of my grandchildren shall each receive an equal share with the others, without regard to the number of children that each of my children may have. And I hereby authorize and direct my said executors to assign and convey to my said grandchildren each of their respective share of my residuary estate absolutely and in fee simple. And if any of my grandchildren be then deceased, leaving issue, a child or children, such issue shall take, if one solely, if more than one equally, share and share alike, such portions of my estate as their parent or parents would have taken if living."

Under this language, it is contended that, although, in case any grandchild became entitled to income at any time during the continuance of the trust, and died without issue, testator expressly directed such income to pass to other parties entitled to income, he yet also intended that such deceased grandchild, dead perhaps for a quarter of a century, should share in principal with living grandchildren and the issue of deceased grandchildren. Testator, however, does not say "all my grandchildren," and thus indi-

vidualize them, which might suggest that he had in mind all those who had ever become members of the class, but merely "my grandchildren," visualizing them as living, for he expressly provides that the share of a grandchild then deceased shall go to his issue. The gift to grandchildren is not a present or express gift, but merely implied from the direction to divide. However, whether direct or implied, the thought that testator, after having carefully excluded all deceased grandchildren from participation in the income and given their shares to their issue, where they left any, and to the family generally, where they did not, should intend by the language used in this clause of his will that deceased childless grandchildren should, nevertheless, share in principal, is one I find myself unable to entertain. I, therefore, hold, both on authority of the cases cited and on what seems to me to be the clear and only reasonable intent to be gathered from the will, that testator gave the remainder of his estate to such of his grandchildren born in his lifetime, or to be born thereafter, as survived his last surviving child, and to the issue of such of his grandchildren as had died leaving issue, the issue taking the share the parent would have taken if living.

*S. Stanger Iszard* and *Arthur E. Hutchinson,* for exceptants.

*Allen Hunter White (Ballard, Spahr, Andrews & Ingersoll,* with him), contra.

GEST, J., April 28, 1928.—The scheme of this will, viewed as a whole, is very clear. The principal or *corpus* of the estate was to be held in trust until the death of the last survivor of the testator's children, and until that time the income was to be appropriated and applied, in the language of the testator, towards the support and maintenance of the families of his five children, including their respective husbands and wives, and their children and grandchildren. As was observed when this will was before the court, Price's Estate, 6 D. & C. 371, the testator was actuated by patriarchal motives and intended to provide for his beneficiaries by groups or families. "So long as the trust continues the living members of the respective families of his children are to enjoy the benefit of a fifth of the income; and, on the other hand, if the line of any of his children should become extinct while the trust endures, then the income provided for that family should be added to the income provided for the surviving families." When, further, the trust should terminate by the death of the last survivor of his children (who was Rebecca P. Hunt), the testator provided that the *corpus* or principal of the trust estate should "then be equally divided among my grandchildren; including my granddaughter, Lydia W. Parrish; born or to be born, share and share alike, so that each of my grandchildren shall receive an equal share with the others, without regard to the number of children, that each of my children may have. And I hereby authorize and direct my said Executors to assign and convey to my said grandchildren, each of their respective share of my residuary estate absolutely and in fee simple. And if any of my grandchildren be then deceased, leaving issue, a child or children, such issue shall take, if one solely, if more than one equally, share and share alike, such portion of my estate, as their parent or parents would have taken if living." Rebecca P. Hunt, the last surviving child of the testator, having now died, we are called on to construe this direction of the will.

The Auditing Judge, in a very careful adjudication, construed the will as a whole and cited many of the principal cases upon the subject of vested and contingent legacies. We fully agree with his conclusion that the clear and only reasonable intent to be gathered from the will was that the testator gave

Price's Estate.

the remainder of his estate to such of his grandchildren, born in his lifetime, or to be born thereafter, as might survive Rebecca P. Hunt, the last survivor of the testator's children, and the issue of such of his grandchildren as had died leaving issue, such issue taking such portion of the estate as their parent or parents would have taken if living, thereby excluding from the distribution the personal representatives of those grandchildren who had died without leaving issue. We do not think it necessary, in consideration of the testator's plain declaration of his intention, to discuss the numerous decisions which were cited in the argument further than to say that we have arrived at our conclusion without laying any special stress on the argument drawn from the phraseology of the will, viz., that the estate "shall be *divided* among my grandchildren," etc., and that the trustees should "assign and convey" their shares to their grandchildren (or their issue). This canon of construction may be followed where, as the present Chief Justice said in Groninger's Estate, 268 Pa. 184, the will itself sheds no light upon the subject of the testator's intention, but in the present case we do not think it necessary to rely on it, as the intention of the testator is so clearly expressed in his own words.

The exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, J., was absent.